IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| GEORGE D. JACKSON, | ) | C/A No. 4:08-2340-CMC-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| WARDEN, TYGER RIVER | ) | |
| CORRECTIONAL INSTITUTION, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, George D. Jackson ("petitioner/Jackson"), is an inmate in the custody of the South

Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on July 1, 2008. Respondent filed a motion for

summary judgment on September 26, 2008, along with supporting memorandum.  The undersigned

issued an order filed September 29, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.

1975), advising petitioner of the motion for summary judgment procedure and the possible

consequences if he failed to respond adequately. Petitioner filed a response and motion for summary

judgment on October 24, 2008.

---

[1] This habeas corpus case was automatically referred to the undersigned United States
Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02,
DSC.  Because this is a dispositive motion, this report and recommendation is entered for review
by the district judge.

## I. PROCEDURAL HISTORY

There has been no significant opposition filed as to the procedural history as set out by the respondent. Therefore, the undisputed procedural history as set out in respondent's memorandum will be discussed below.

Petitioner is presently confined in the Tyger River Correctional Institution, of the South Carolina Department of Corrections (SCDC), as the result of his Greenville County conviction and sentence for trafficking in cocaine. The Greenville County Grand Jury indicted Petitioner at the October 2003 term of court for two counts of trafficking in cocaine (03-GS-23-7212). App. pp. 20-21; 23-24. James H. "Chip" Price, III, Esquire, represented him on these charges.

On June 15, 2004, he pleaded guilty before the Honorable Edward W. Miller. Judge Miller sentenced him to fifteen years imprisonment on each count. App. pp. 1-19; 22; 25.

Petitioner timely served and filed a notice of appeal. On August 16, 2005, however, petitioner sent an affidavit to the Court asking the Court to dismiss the appeal. So, on August 26, the South Carolina Court of Appeals filed an Order dismissing petitioner's appeal. It sent the Remittitur to the Greenville County Clerk of Court with that Order.

Petitioner filed a pro se Post-Conviction Relief (PCR) Application (05-CP-23-7170) on November 7, 2005. He alleged the following grounds for relief in his Application:

1.  Ineffective assistance of counsel [because counsel failed to] (a) "request proficiency test and SLED certification" of chemist, and (b) obtain Brady material;

2.  Erroneous sentencing;

3.  Lack of Subject Matter Jurisdiction.

App. pp. 26-42. The State filed its Return dated December 22, 2005. App. pp. 43-47.

The Honorable James B. Lockemy held an evidentiary hearing into the matter on April 18, 2006, at the Greenville County Courthouse. Petitioner was present at the hearing; and Susannah C. Ross, Esquire, represented him. Assistant Attorney General Karen C. Rattigan represented the State. Petitioner testified on his own behalf, while the State presented the testimony of trial counsel, Mr. Price. App. pp. 48-89.

On August 25, 2006, Judge Lockemy filed an Order of Dismissal, in which he denied relief and dismissed the Application with prejudice. Although all three of the allegations contained in the Application are set forth therein, the Order of Dismissal addressed petitioner's claims of ineffective assistance of trial counsel. Judge Lockemy found that petitioner waived any other allegations by failing to present any evidence in support of them. App. pp. 90-95.

Petitioner then filed a Motion to Reopen or Alter the Judgment. Supp. App. pp. 2-3. Respondent filed a Return to Motion to Alter or Amend the Order of Dismissal on May 26, 2006. App. pp. 97-99. On August 25, 2006, Judge Lockemy filed an Order denying petitioner's motion. Judge Lockemy again found that counsel was not ineffective for failing to challenge the lack of certification by the SLED chemist. App. pp. 100-01.[2]

Petitioner timely served and filed a notice of appeal. Assistant Appellate Defender Katherine H. Hudgins represented him in collateral appellate proceedings. On June 22, 2007, petitioner filed a Petition for Writ of Certiorari. The only Question Presented in the Petition for Writ of Certiorari

---

[2] Respondent conceded at the PCR hearing that petitioner's indictment erroneously listed the CDR(Criminal Docket Report) code for trafficking in crack cocaine. Respondent thereafter sent an Order correcting this error to Judge Miller, the judge before whom petitioner had pleaded guilty. The signed Order correcting the CDR Code was filed on May 5, 2006, and sent to SCDC. Therefore Judge Lockemy found that this allegation was moot. App. p. 100.

was stated as follows:

> Was counsel ineffective for failing to learn and failing to inform
> petitioner that the chemist who tested the cocaine was not certified by
> the South Carolina Law Enforcement Division to test cocaine?

Petition for Writ of Certiorari at p. 2. The State filed a Return to Petition for Writ of Certiorari

on August 6, 2007. The South Carolina Supreme Court filed an Order on March 6, 2008, in which

it denied certiorari. It sent the Remittitur to the Greenville County Clerk of Court on March 24, 2008.


## II. PETITIONER'S GROUNDS FOR RELIEF

In his *pro se* Petition for Writ of Habeas Corpus, petitioner attached a memorandum to his

petition raising the following challenges to his conviction:[3]

GROUND ONE:           Invalid Proceedings Void Indictment.

SUPPORTING FACTS:       The matter presented below for review is not a challenge to the Court's general grant of authority to hear and determine cases. That authority is rightfully granted by our Constitution, State v. Gentry, 363 SC 93, 610 SE 2d 494, (2005), and will not be at issue here.

                                              Instead Petitioner contends that the Court of General Sessions failed to comply with statutory law jurisdictional in nature, specifying the manner and means for lawful return of truebilled indictments.

                                              The primary questions before this Court are whether S.C. Code Ann. §14-9-210 is jurisdictional in nature, and whether it requires that all criminal indictments must be issued through a grand jury impaneled before the Court of General Sessions, and whether State's noncompliance with mandatory indictment procedures, and willful acts of perjury have

---

[3] See also petitioner's response in opposition, page 4, whereupon petitioner list the three
allegations he states he raised in his habeas petition.

rendered all judicial proceedings invalid and its indictments null.

GROUND TWO:          Ineffective assistance of counsel.

SUPPORTING FACTS:     The Petitioner stated the following:

1. My defense attorney failed to conscientiously discharge his professional responsibilities while he was handling my case.

2. My defense attorney failed to effectively challenge the arrest and seizure of the petitioner.

3. My defense attorney failed to act as my diligent, conscientious advocate.

4. My defense attorney failed to give me his complete loyalty.

5. My defense attorney failed to serve my cause in good faith.

6. My defense attorney did not have my best interest in mind while he was supposed to be investigating and preparing my case.

7. My defense attorney neglected the necessary investigations and the preparation of my case.

8. My defense attorney did not do the necessary legal research.

9. My defense attorney did not do the necessary factual investigations on my behalf.

10. My defense attorney did not conscientiously gather any information to protect my rights.

11. My defense attorney did not try to have my case settled in a manner that would have been to my best advantage.

12. My defense attorney did not advise me of all my rights or take any of the actions that were necessary to protect preserve them; knowing that I was not versed in the law.

13. My defense attorney, knowing I was illiterate in the law, never properly ascertained whether or not I actually understood or comprehended all of the issue that were involved in my case.

14. My defense attorney never properly consulted with me or kept me informed with what was going on as far as my case was concerned.

15. My defense attorney never explained to me or discussed with me any of the elements of the crime charged.

16. My defense attorney never made an attempt to ascertain whether or not I actually knew the elements for the crime charged were or whether or not I understood exactly what the term "criminal element" actually meant.

17. My defense attorney never explained to me or discussed with me how the elements of the crime charged and the evidence that the prosecution planned to introduce into evidence against me related to one another and did not discuss how the sentencing would be done especially as it relates to the elements of the crimes in State v. Boyd.

18. My defense attorney never intended to offer any viable defense to the court, jury on my behalf.

19. My defense attorney never informed me of any of the defenses that were available to me.

20. My defense attorney never explained to me or discussed with me any kind of defense strategy.

21. My defense attorney never explained to me or discussed with me any of the tactical choices that they either made or were planning to make.

22. My defense attorney dictated to me exactly how my case was going to be handled and offered no alternative options.

23. My defense attorney failed to properly acquaint themselves with the law and the facts surrounding my case and as a direct result of their intentional negligence, there was a very serious error in their assessment of both the law and the facts.

24. Because of my defense attorney's gross neglect and his many legal errors no viable defense was put in issue for me during the Court proceeding, trial.

25. My defense attorney did not subject the prosecution's case to any adversarial testing.

6

26.     My defense attorney failed to oppose the prosecution's case with any adversarial litigation.

27.     My defense attorney failed to function as the government's adversary in any sense of the word.

28.     My defense attorney failed to pursue any of the legal recourse that were available to him.

29.     The attorney that represented me on these charges in Court failed to function as the counsel that the Constitution's Sixth Amendment guarantees.

30.     My defense attorney failed to call alibi witnesses in my behalf which would have proven my innocense.

GROUND THREE:          [The prosecution violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose that the chemist who "analyzed the drugs, was not certified by the State Law Enforcement Division to test cocaine"].

SUPPORTING FACTS:     The Petitioner's plea counsel Mr. James H. Price, III, Esq. openly admitted that "had he known the chemist, which analyzed the drugs, was not certified by the State Law Enforcement Division to test cocaine." With this Statement, there exists sufficient evidence of probative value to warrant relief.

To show Brady due process violation, Petitioner is not required to show that, after discounting the exculpatory evidence in light of the undisclosed evidence, there would not have been enough to convict, or garner a guilty plea, rather, one shows a Brady violation by demonstrating that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in proceeding.

The Petitioner's right to a fair trial was impeded by the State's withholding of this pertinent information which could facially challenged the admissibility of the drug evidence itself.

(*See* memorandum attached to Habeas Petition and petitioner's response ,docs. #1 and 19).

## III.  SUMMARY JUDGMENT

On September 26, 2008, the respondent filed a return and memorandum of law in support of their motion for summary judgment.  As stated, petitioner filed a document in response entitled "Response to Respondent's Return and Memorandum of Law in Support of Motion for summary Judgment; Objections; Refutations, and Petitioner's Motion for Summary Judgment." (Doc. #19).

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case,

on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the

movant can show a complete failure of proof concerning an essential element of the non-moving

party's case, all other facts become immaterial because there can be "no genuine issue of material

fact."  In the Celotex case, the defendants are "entitled to judgment as a matter of law" under Rule

56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case

with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.


## IV.  STANDARD OF REVIEW

Since Jackson filed his petition after the effective date of the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d),

as amended.  Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.

1998); Green v. French, 143 F.3d 865 (4th Cir. 1998).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim--(1) resulted
> in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or (2) resulted in a decision that
> was based on an unreasonable determination of the facts in light of
> the evidence presented in the State court proceeding.

In a thorough discussion of the application of this statute in Green, the Fourth Circuit stated:

> If a state court decision is in square conflict with a precedent
> (supreme court) which is controlling as to law and fact, then the writ
> of habeas corpus should issue; if no such controlling decision exists,
> the writ should issue only if the state court's resolution of a question
> of pure law rests upon an objectively unreasonable derivation of legal
> principles from the relevant supreme court precedents, or if its
> decision rests upon an objectively unreasonable application of

established principles to new facts. In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable.

See also Fitzgerald v. Greene, 150 F.3d 357, 362 (4th Cir. 1998); Wright v. Angelone, 151 F.3d 151, 156 (4th Cir. 1998); Cardwell v. Greene, 152 F.3d 331, 339 (4th Cir. 1998). In Williams v. Taylor, 163 F.3d 860 (4th Cir. 1998), the court specifically rejected an argument that the standard of review enunciated in Green, 143 F.3d 865, was erroneous. Thus, to a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law. See O'Brien v. DuBois, 145 F.3d 16 (lst Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review"). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Wilson v. Moore, 999 F. Supp. 783 (D.S.C. 1998).

## V. ARGUMENTS/FINDINGS

GROUND ONE

In Ground One, petitioner alleges the trial court lacked subject matter jurisdiction to accept his guilty plea asserting his indictments were invalid because they were not issued through a grand jury impaneled before the Court of General Sessions, and whether the State's noncompliance with mandatory indictment procedures rendered all judicial proceedings invalid and indictments null. In his memorandum attached to his petition, petitioner states that "the matter presented below for review is not a challenge to the Court's general grant of authority to hear and determine cases. That

authority is rightfully granted by our Constitution. Instead Petitioner Jackson contends that he Court of General Sessions failed to comply with statutory law jurisdictional in nature, specifying the manner and means for lawful return of true-billed indictments." (Memorandum attached to petition).

Respondent argues that "petitioner's first allegation challenges the trial court's subject matter jurisdiction based upon the prosecution's supposed failure to comply with S.C. Code Ann. 14-9-210(1976), which requires that all criminal indictments must be issued through a grand jury impaneled before the Court of general Sessions." Respondent argues that summary judgment should be granted as this issue fails to state a claim upon which relief may be granted. Respondent argues that this is "a state's determination that one of its courts had jurisdiction overly a purely state law criminal charge is not a matter cognizable in federal habeas corpus."(Memorandum).

As this issue pertains to the state court's jurisdiction, this issue should be dismissed because claims arising from state law are not cognizable. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Jurisdiction is a non-cognizable state law issue. See Wright v. Angelone, 151 F.3d 151, 156-158 (4th Cir.1998). Therefore, the undersigned recommends that this issue be dismissed.


GROUND TWO

Next, petitioner alleges trial counsel was ineffective. Petitioner raises thirty allegations within this issue regarding ineffective assistance of trial counsel. Respondent asserts that each of these allegations is procedurally defaulted with the exception of the contention that trial counsel was ineffective "for failing to learn and failing to inform petitioner that the chemist who tested the cocaine was not certified by the South Carolina Law Enforcement Division to test cocaine." (Memorandum). Respondent argues that the state court's rejection of petitioner's allegation was not

11

"contrary to" and did not involve an "unreasonable application of" clearly established United States Supreme Court precedent.

At the PCR hearing, petitioner testified that after making inquiries of both SLED and the Greenville County Department of Public Safety that he received information that Officer James W. Armstrong, the Greenville County drug chemist who analyzed the drugs in petitioner's case and determined that they were cocaine was not certified by SLED. Petitioner testified that his trial counsel never brought this to his attention and that had he known that he was not certified by SLED, he would have gone to trial as opposed to pleading guilty.

Trial counsel, James H. Chip Price, III, Esquire, testified that petitioner was arrested in March 2003 and first spoke to Mr. Price in the fall of 2003. Petitioner did not retain Price until March 2004 and told counsel of some defenses he had such as them not catching him with any cocaine. (Tr. 67). Price testified that he immediately filed a discovery request and received the State's response within two weeks. Mr. Price then learned that petitioner had given a statement admitting that he had sold the cocaine, and that there were audio tapes of the informant. (Tr. 67). Based upon the evidence, Price testified that he did not feel petitioner had any chance if he went to trial and he explained this to petitioner along with the fact that he was looking at a mandatory twenty-five year sentence if he went to trial. (Tr. 68). Price testified that petitioner told him he would seek a lesser sentence but that the prosecutor would not go below a fifteen year sentence. Id. Price testified that the drug report in this case was generated by the Greenville County Lab and that he did not realize that Officer Armstrong was not certified by SLED until the morning of the hearing. Price further testified that Officer Armstrong had previously testified as an expert in drug analysis on numerous occasions. If he had realized that Armstrong was not certified by SLED, Price testified

12

that he would have told petitioner that there would be a chance of possibly keeping the drugs out at trial but his understanding was that certification was only required if both parties agree that the drug weight and type are going to be admitted by affidavit but he had not researched the issue. (Tr. 70). Upon questioning by the judge, Price testified that he had never seen a judge refuse to admit evidence based on a lack of certification by SLED. Price testified that he felt that the weight or the credentials of the person testifying would be determinative. Price testified that he did not think that Mr. Armstrong would not be able to testify due to the weight of his credentials and did not think that would prohibit the court from qualifying Armstrong as an expert. (Tr. 73).

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland , supra, the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that,
> but for counsel's unprofessional errors, the result of the proceeding

13

would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  (Emphasis added.)

In Lockhart v. Fretwell, 506 U.S. 364 (1993), the Supreme Court clarified its definition of prejudice quoted above, stating that "an analysis focusing solely on mere outcome determination . . . is defective."  Instead, an appropriate analysis of prejudice should consider "whether the result of the proceeding was fundamentally unfair or unreliable."  Therefore, a court analyzing the prejudice prong should not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." See Williams v. Taylor, Nos. 98-14, 98-16, 1998 WL 883336 (4th Cir. Va. Dec. 18, 1998) (quoting Lockhart, at 369-70).

A review of the PCR hearing and decision reveals the PCR found petitioner's testimony not credible and counsel's testimony to be credible. The PCR judge found that "counsel adequately conferred with [petitioner], conducted a proper investigation, and was thoroughly competent in his representation. The PCR judge stated the following with respect to this issue:

> The Applicant admitted to the plea judge both that he was guilty and that the facts recited by the solicitor were true. (Plea transcript, p.10, line 24-p. 11, line 1; p.17, lines 1-2). The Applicant also told the plea judge that he understood the trial rights he was waiving in pleading guilty, was satisfied with counsel, and had not been coerced in any way. (Plea transcript, p.10).

(Tr. 93).

The PCR judge found that petitioner had failed to prove that trial counsel's performance was deficient under Strickland v. Washington, 466 U.S. 668 (1984). With respect to the issue of Armstrong not being certified by SLED, the PCR judge further found as follows:

> This Court finds plea counsel advised the Applicant of the risks and advantages of pleading guilty versus going to trial-especially in light of the strength of the State's case. This Court noes there is no rule or statute regarding certification for drug analysis. This Court further finds a lack of formal certification was unnecessary and would not have made a difference in this case.

(Tr. 93).

The undersigned concludes that the record supports the state PCR court's holding and it is not contrary to clearly established federal law or an unreasonable determination of the facts in light of the evidence in the state court proceedings. Even if petitioner had known that Armstrong was not certified by SLED, petitioner fails to show the report would not have been admitted. Therefore, it is recommended that this issue be dismissed and respondent's motion for summary judgment granted.

The undersigned finds that the remaining allegations in Ground two have been procedurally defaulted. The failure to raise a claim in the first state post-conviction petition as required by state law provides an adequate state procedural ground for denying federal habeas corpus relief. See Murch v. Mottram, 409 U.S. 41, 46 (1972); Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990), cert. denied, 499 U.S. 982 (1991); Waye v. Murray, 884 F.2d 765, 766 (4th Cir. 1989); Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1998). Similarly, if a petition before a federal court fails to raise a claim in state court and is precluded by state procedural rules from returning to state court to raise the issue, he has procedurally by-passed his opportunity for relief in state courts. In such a case, the exhaustion requirement is technically met, but a federal

district court is barred from considering the habeas claim, absent a showing of cause and actual

prejudice. Coleman v. Thompson, 501 U.S. at 750 (1991). The procedural default doctrine and its

attendant "cause and prejudice" standard are grounded in comity and federalism concerns. Id. at 730-

31. These principles apply whether the default occurred at trial, on appeal, or on state collateral

attack. Murray v. Carrier, 477 U.S. at 490-92.

Thus, a petitioner must demonstrate cause for his state court default of any federal claim, and

prejudice therefrom, before the federal habeas court will consider the claim's merits. Counsel's

ineffectiveness in failing properly to preserve a claim for state court review will suffice as cause, but

only if that ineffectiveness itself constitutes an independent constitutional claim. Id. at 489-97. The

comity and federalism principles underlying the doctrine of exhaustion of state remedies require an

ineffective-assistance claim to be presented to the state courts as an independent claim, before it can

be used to establish cause for a procedural default. Id. at 489. The doctrine's purposes would be

frustrated if federal review were available to a prisoner who had presented his claim in state court,

but in such a manner that the state court could not, under its procedural rules, have entertained it. Id.

In Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997), the Fourth Circuit Court of Appeals set

forth the exhaustion requirements under Section 2254:

> In the interest of giving state courts the first opportunity to consider
> alleged constitutional errors occurring in a defendant's state trial and
> sentencing, a §2254 petitioner is required to "exhaust" all state court
> remedies before a federal district court can entertain his claims. Thus,
> a federal habeas court may consider only those issues which have
> been "fairly presented" to the state courts . . .
>
> To satisfy the exhaustion requirement, a habeas petitioner must fairly
> present his claim to the state's highest court. The burden of proving
> that a claim has been exhausted lies with the petitioner.

The exhaustion requirement, though not jurisdictional, is strictly enforced . . .

Id. at 910-911 (citations omitted).

In order to exhaust his claims in state court, a South Carolina petitioner must file an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10 to 17-27-160. "Exhaustion includes the filing of an application, the rendering of an order adjudicating the issues, and petitioning for, or knowingly waiving, appellate review." Gibson v. State, 495 S.E.2d 426, 428 (S.C. 1998).

This issue was not raised on a direct appeal or at PCR. The petitioner has not shown any cause and prejudice to overcome the default. Without cause, the undersigned does not look at prejudice. The petitioner also has not shown "actual innocence" to overcome the default. The undersigned finds that petitioner has failed to make the requisite showing to overcome this default, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, supra. Therefore, the undersigned recommends that the remaining issues under Ground Two with respect to ineffective assistance of counsel be dismissed as procedurally barred and respondent's motion for summary judgment granted on the remaining issues.

**Ground Three**

In respondent's memorandum and in petitioner's response in opposition, the parties assert that petitioner raised the following as Ground Three: [the prosecution violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose that the chemist who "analyzed the drugs, was not

certified by the Sate Law Enforcement Division to test cocaine." (Se respondent's memorandum and petitioner's response in opposition).

Respondent argues that this issue should be dismissed and it is procedurally defaulted by failing to obtain a ruling on it in the Order of Dismissal and because he did not move to alter or amend on this basis. Additionally, respondent asserts that he did not raise any Brady issue in connection with his argument on certiorari.

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C.A. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); see Williams v. Taylor, 529 U.S. at 398. If, however, "a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits . . . , our review of questions of law and mixed questions of law and fact is de novo." Weeks v. Angelone, 176 F.3d 249, 258 (4th Cir. 1999).

The failure to raise a claim in the state post-conviction petition as required by state law provides an adequate state procedural ground for denying federal habeas corpus relief. See Murch v. Mottram, 409 U.S. 41, 46 (1972); Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990), cert. denied, 499 U.S. 982 (1991); Waye v. Murray, 884 F.2d 765, 766 (4th Cir. 1989); Clanton v. Muncy,

845 F.2d 1238, 1241 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1998). Similarly, if a petition before a federal court was not raised as a claim in state court and is precluded by state procedural rules from returning to state court to raise the issue, he has procedurally by-passed his opportunity for relief in state courts. In such a case, the exhaustion requirement is technically met, but a federal district court is barred from considering the habeas claim, absent a showing of cause and actual prejudice. Coleman v. Thompson, 501 U.S. at 750 (1991). The procedural default doctrine and its attendant "cause and prejudice" standard are grounded in comity and federalism concerns. Id. at 730-31. These principles apply whether the default occurred at trial, on appeal, or on state collateral attack. Murray v. Carrier, 477 U.S. at 490-92.

Thus, a petitioner must demonstrate cause for his state court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the claim's merits. Counsel's ineffectiveness in failing properly to preserve a claim for state court review will suffice as cause, but only if that ineffectiveness itself constitutes an independent constitutional claim. Id. at 489-97. The comity and federalism principles underlying the doctrine of exhaustion of state remedies require an ineffective-assistance claim to be presented to the state courts as an independent claim, before it can be used to establish cause for a procedural default. Id. at 489. The doctrine's purposes would be frustrated if federal review were available to a prisoner who had presented his claim in state court, but in such a manner that the state court could not, under its procedural rules, have entertained it. Id. This issue was ruled upon by the PCR judge in the Order of dismissal and petitioner did not file a motion to alter or amend the order. Further, this issue was not raised in the petition for writ of certiorari. This issue has been procedurally defaulted. The undersigned finds that petitioner has failed to make the requisite showing to overcome this default, Coleman v. Thompson, 501 U.S. at

750, or that a "fundamental miscarriage of justice" has occurred. <u>Murray v. Carrier</u>, <u>supra</u>. Therefore, the undersigned recommends that Ground Three in the habeas petition be dismissed as procedurally barred and respondent's motion for summary judgment granted on this issue.

## VI. CONCLUSION

Based on the foregoing, it is recommended that respondent's motion for summary judgment (document #14) be GRANTED and petitioner's petition for Writ of Habeas Corpus should be denied, and this Petition dismissed. For the reasons stated above, it is also recommended that petitioner's motion for summary judgment be denied and all other outstanding motions be deemed moot.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
July <u>27</u>, 2009                          United States Magistrate Judge
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**